THE STATE EX REL. ROLLINS, APPELLANT, *v.* INDUSTRIAL COMMISSION OF OHIO, APPELLEE.

[Cite as *State ex rel. Rollins v. Indus. Comm.*, 105 Ohio St.3d 319, 2005-Ohio-1827.]

(No. 2004–0669—Submitted January 18, 2005—Decided May 4, 2005.)

---

LUNDBERG STRATTON, J.

{¶ 1} Appellant-claimant, Roger Rollins, was injured on February 7, 1994, while employed by Central Erie Supply & Elevator Association. He filed a workers' compensation claim and began receiving temporary total disability compensation ("TTC") shortly thereafter.

{¶ 2} In 1996, the Bureau of Workers' Compensation received information that claimant was working while receiving TTC. An investigation revealed that claimant was the pastor of the Bellevue Missionary Baptist Church. He held three services per week and received $60 or $70 weekly as a "love offering" during the period in dispute, paid by check.

{¶ 3} The bureau ultimately asked appellee, Industrial Commission of Ohio, to declare TTC overpaid from March 5, 1994, to August 22, 1996. A commission district hearing officer denied the bureau's motion after finding that the weekly hours claimant devoted to the church and the amount received for them were too insubstantial to support a finding of sustained remunerative employment. A staff hearing officer reversed, finding that the amount was not too insubstantial to preclude TTC. The commission denied further appeal.

{¶ 4} Claimant filed a complaint in mandamus in the Court of Appeals for Franklin County, alleging that the commission had abused its discretion in declaring TTC to have been overpaid. The court, however, rejected claimant's assertion that his activities were not work and upheld the commission's order.

{¶ 5} This cause is now before this court on an appeal as of right.

{¶ 6} R.C. 4123.56 provides two types of compensation for claimants who, as here, are unable for medical reasons to return to their former position of employment. Both compensate for the loss of earnings incurred as the result of an industrial injury. TTC presumes a *total* loss of earnings and is, therefore, "unavailable to one who has returned to work, i.e., is earning wages." *State ex rel. Blabac v. Indus. Comm.* (1999), 87 Ohio St.3d 113, 115, 717 N.E.2d 336; *State ex rel. Ramirez v. Indus. Comm.* (1982), 69 Ohio St.2d 630, 23 O.O.3d 518, 433 N.E.2d 586. The second type of compensation, wage-loss compensation, not only permits a return to other employment but encourages it, by paying 66 2/3 percent of the difference between the claimant's wages before and after the injury.

{¶ 7} All agree that for medical reasons, the claimant cannot resume his prior duties as an employee of Central Erie Supply & Elevator Association. At issue are his services on behalf of his church during the time he was receiving TTC. Claimant does not dispute that he has been the church's pastor since 1991 and has regularly conducted three services per week during that period. He also admits receiving from the church weekly checks that have been characterized as "love offerings." Through the years, the amount of these checks has remained fairly constant.

{¶ 8} Claimant concedes that it is impermissible to receive earnings from employment while receiving TTC. As the staff hearing officer's order stated, a warning appears on each TTC check: "If this check is to compensate you for total disability, you are not entitled to it if you are working. Therefore, you should return it to the BWC immediately." Claimant offers two explanations as to why

his activities do not constitute work. The first derives from R.C. 4123.01(A)(2), which exempts from the definition of "employee" a duly ordained, commissioned, or licensed minister, unless the minister is expressly considered an employee by the church. Claimant's argument implies that if he is not an employee, his activities cannot be considered either employment or work. This argument, however, was not made previously and must be deemed waived. *State ex rel. Gibson v. Indus. Comm.* (1988), 39 Ohio St.3d 319, 320, 530 N.E.2d 916.

{¶ 9} Claimant's second argument is that the payment he received was a gratuity that parishioners voluntarily gave him. Claimant concurs in a fellow parishioner's description of his pastoral duties as neither a job nor work, but instead as a calling and privilege in the service of God.

{¶ 10} As did the court below, we, too, recognize the sincerity of claimant's beliefs. However, as laudable as his motivation may be, it does not overcome the legal infirmities of his position. The nature of the payment is not determinative. In *State ex rel. Parma Community Gen. Hosp. v. Jankowski*, 95 Ohio St.3d 340, 2002-Ohio-2336, 767 N.E.2d 1143, we addressed the issue of charitable work by a volunteer who at the time was receiving TTC. There was no evidence that she had received any wages or other remuneration for her services. Thus, she remained eligible for TTC. It is the payment itself that transforms claimant's services into "work" for purposes of the statute.

{¶ 11} R.C. 4123.56(A) prohibits TTC "for the period when any employee has returned to work," without any qualification of the term "work." It does not distinguish certain endeavors based on, for example, amount of earnings or type of occupation. Consistent with R.C. 4123.56(A), *Ramirez* simply referred to a return to "work." We reaffirmed that point 17 years later in *Blabac*. The claimant's request that he be treated differently because of the perceived social value of his work conflicts with R.C. 4123.56(A).

{¶ 12} We reject claimant's second argument because it would have unmanageable practical and financial ramifications for future claims. He does not deny that the weekly money he receives is directly related to his pastoral duties. Regardless of how claimant chooses to characterize it, he is receiving remuneration in exchange for labor or services, which constitute "work." *State ex rel. Lawson v. Mondie Forge*, 104 Ohio St.3d 39, 2004-Ohio-6086, 817 N.E.2d 880, ¶ 19.

{¶ 13} What claimant is therefore seeking is in effect an exception to the statute's prohibition, recognized in *Ramirez*, against concurrent receipt of wages and TTC. We decline to judicially create such an exception. TTC is a statutorily created category of workers' compensation. We believe that any modification to TTC should likewise be created by the General Assembly.

{¶ 14} An exception based on social or religious values would create a precedent that would be difficult to define or to limit. Many persons choose their careers for altruistic rather than financial reasons. As the magistrate of the court of appeals aptly observed, "[m]any teachers, social workers, legal advocates, clergy and other persons view their work as an important mission that they gladly pursue despite low pay." Others—regardless of occupational motivation or remuneration—also consider their job to have great social value. The claimant's proposal could, therefore, permit innumerable claimants to work while receiving TTC. This change would defeat the very purpose of TTC—to replace lost wages. We find it unacceptable to enforce the longstanding prohibition against concurrently receiving earnings and TTC against some and not others on the basis of the nature of the work.

{¶ 15} The low amount of weekly remuneration involved is not a determining factor. *Blabac* made no distinction based on the amount of earnings received. If the amount of remuneration were a consideration, then we would be required to focus on the amount of earnings in each case. Where would we draw the line? R.C. 4123.56(A) does not require such a fact-intensive analysis.

{¶ 16} As we emphasized in *Blabac,* wage-loss compensation is the appropriate type of compensation for claimants who experience a postinjury *reduction* in income as the result of lower-paying alternative employment. In contrast, TTC is available solely for those who have no earned wages. Consequently, the claimant is ineligible for TTC during the period in question.

{¶ 17} The judgment of the court of appeals is affirmed.

Judgment affirmed.

MOYER, C.J., O'CONNOR, O'DONNELL and LANZINGER, JJ., concur.

RESNICK and PFEIFER, JJ., dissent and would reverse the judgment of the court of appeals.

---

Calhoun, Kademenos, Heichel & Childress and Christopher S. Clark, for appellant.

Jim Petro, Attorney General, and Dennis H. Behm, Assistant Attorney General, for appellee.